**RONG MEI WEI, Petitioner,**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 07–1563.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) [April 10, 2008].

Filed: April 23, 2008.

Lorance Hockert, New York, NY, for Petitioner.

William C. Peachey, Ada E. Bosque, Kathleen J. Kelly, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SMITH, HARDIMAN and ROTH, Circuit Judges.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

Rong Mei Wei (Wei) petitions for review of an order of the Board of Immigration Appeals (BIA) finding her ineligible for asylum and withholding of removal. We will affirm the BIA's holding that Wei failed to establish past persecution. Because the agency failed to address Wei's claim of a well-founded fear of future persecution, however, we will vacate the BIA's order and remand the case for consideration of this claim.

### I.

Wei is a native and citizen of the People's Republic of China. She entered the United States on May 29, 2003 without a valid entry document and was subsequently placed in removal proceedings. She timely submitted applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

Immigration Judge (IJ) Donald V. Ferlise denied Wei's requests for relief, finding her testimony incredible. In particular, the IJ cited: (1) inconsistencies in various dates that she provided; (2) her "extremely bizarre" account of a visit by family planning officials leading to an alleged forced abortion; (3) conflicting testimony as to whether she was awake or asleep during the abortion; and (4) false information that she provided to immigration officials in her airport interview. The IJ also took issue with a household registration document that Wei provided, not-

ing that although it was supposedly issued in 1997, it inexplicably contained information from 2000. Finally, the IJ found Wei's asylum application frivolous.

On appeal, the BIA adopted and affirmed the IJ's denial, agreeing that Wei had failed to present credible testimony and evidence. However, the BIA vacated the IJ's finding that Wei had submitted a frivolous asylum application. Wei filed a timely petition for review of her asylum and withholding of removal claims.[1]

## II.

The crux of Wei's appeal is that she suffered past persecution and has a well-founded fear of future persecution because she violated China's family planning policy. Wei claims that she was forced to abort an unauthorized pregnancy while in China and that she faces sterilization if returned because she has had more than one child.

At her hearing before the IJ, Wei testified that she is married to Hong Huang Sheng and that the couple's first child was born in China on September 17, 1994. Following the child's birth, family planning officials ordered Wei to have an intrauterine device (IUD) inserted. After experiencing pain and discomfort, Wei had the IUD removed by a private doctor in February 1995 and became pregnant soon thereafter. Fearing forced abortion and sterilization, Wei went into hiding and did not leave her home for several months. Nevertheless, she was discovered by family planning officials on October 9, 1995—approximately three months into her pregnancy. Wei indicated that although she was not visibly pregnant at that time, the officials had been alerted by her neighbor, who suspected that Wei was pregnant because she had stopped going outside.

Wei testified that she was then taken to the local hospital and forced to undergo an abortion without even receiving an examination. When asked how the doctors could have known that she was pregnant given that she was not showing, she responded that her "neighbors told them." She stated that she was given pills and an injection before the abortion, and that these made her "[a] little bit sleepy." When subsequently asked whether she was awake during the procedure, she responded "[n]o, not awake." When this question was repeated later, she responded "[n]o, not really." When asked for clarification, she responded "[h]alf. Not really. Not sleeping."

After the abortion, Wei said she returned home to find that her husband had assaulted one of the officials with a metal stake. Fearing arrest, her husband hid from the authorities and arranged to flee China for the United States. Several years later, Wei left China to join her husband in this country. During her airport interview, Wei provided immigration officials with a false name and false information regarding her husband's whereabouts. After reuniting with her husband, Wei conceived and gave birth to a second child and was pregnant with the couple's third child during the hearing in this case.

In rejecting Wei's claims, the IJ found that she had "submitted a totally incredible case in chief." When asked by her own attorney to describe when she first came into contact with Chinese family planning officials, Wei gave three different months (July, April, and October of 1995). When the IJ confronted Wei with this discrepancy, Wei responded that she mistakenly believed that she was being asked the date she first became pregnant, which she said was October 9, 1995. A short time thereafter—again upon the prompting of her own attorney—Wei testified that October 9, 1995 was the date of her abor-

---

1. Wei did not appeal the BIA's affirmance of the IJ's denial of her CAT claim.

tion. The IJ also noted discrepancies in Wei's testimony regarding the year in which her IUD was inserted and the month in which she first missed her period.

In addition, the IJ took issue with Wei's account of her forced abortion, questioning why officials would perform an abortion on someone who was not visibly pregnant without any sort of examination beforehand. In particular, the IJ noted that the abortion occurred "merely because a neighbor thought she was pregnant since she had not left her home." The IJ also cited "vacillation" in Wei's testimony regarding whether she was asleep or awake during the procedure itself, noting that "[i]nitially she told the Court that she was asleep during the abortion. Then she testified that she was not totally asleep during the abortion."

The IJ additionally cited the false name and false information that Wei provided at her airport interview. Although noting that this alone could not serve as the basis for an adverse credibility finding under *Balasubramanrim v. INS*, 143 F.3d 157 (3d Cir.1998), the IJ stated that this was only "one small part of [Wei's] total lack of credibility." Finally, the IJ called a household registration document that Wei provided "bogus" and "counterfeit," noting that although the document was allegedly issued in 1997, it nevertheless indicated that Wei's husband had moved to the United States in 2000.

### III.

Where the BIA adopts the decision of the IJ, we review the decision of the IJ. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n. 2 (3d Cir.2001). We review an IJ's adverse credibility determination under the deferential substantial evidence standard, under which it will be upheld if "supported by evidence that a reasonable mind would find adequate." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir.2003).

### IV.

In challenging the IJ's adverse credibility determination, Wei raises some valid points. She correctly notes that the IJ's analysis of the household registry document—in which he concluded that the document was "bogus" because it contained information from 2000 despite supposedly being issued in 1997—ignored the fact that the information from 2000 had been written in by hand. Furthermore, we fail to see the "vacillation" in Wei's testimony regarding whether she was asleep or awake during the alleged abortion; indeed, her testimony seems consistent with some form of sedation short of general anesthesia.

█ Nevertheless, these flaws in the IJ's credibility analysis are outweighed by other substantial evidence in the record. As noted previously, Wei provided inconsistent dates for her first encounter with family planning officials, the year in which her IUD was inserted, and the month in which she first missed her period. Furthermore, the IJ's concerns regarding Wei's claim that she was subjected to an abortion based solely upon her neighbor's suspicions are supported by the record. Considering these facts in light of our deferential standard of review, we conclude that substantial evidence supports the IJ's adverse credibility finding with regard to Wei's claim of past persecution.

### V.

In addition to her past persecution claim, Wei argued that she had a well-founded fear of future persecution in China, claiming that she would face sterilization upon return because she had violated China's one-child policy. In support of

this claim, Wei submitted birth certificates for her two daughters as well as the oft-cited affidavit of demographer John Shields Aird regarding family planning policies in China.

■ Inexplicably, both the IJ and the BIA failed to address Wei's claim of a well-founded fear of future persecution. Consequently, we must remand the case so this claim can be addressed by the agency in the first instance.

## VI.

For the foregoing reasons, we will vacate the order of the Board of Immigration Appeals and remand the case for proceedings consistent with this opinion.